HENRY ECHELKAMP, Respondent, v. BEMAI SCHRADER, Appellant.

1. *Injunction, when will lie in case of trespass.*—An injunction will not be awarded to restrain the commission of an ordinary trespass when the injury flowing from it is not irreparable, and where an adequate remedy may be had in the recovery of damages against a solvent party; but it will lie where the acts done or threatened are ruinous to the property trespassed upon, or are of a character to permanently impair its just enjoyment in the future.

2. *Injunction—When title to locus in quo is uncertain, temporary injunction will be granted.*—When the right or title to the place in controversy, or to do the act complained of, is doubtful and explicitly denied in the answer, no permanent or perpetual injunction will usually be granted till such trial at law is had settling the contested rights and interests of the parties. In such case, where plaintiff is in possession of the title to the *locus in quo*, defendant is the proper party to bring the action to test the rights of the respective parties; and in the event of his failure to do so, the injunction should be made perpetual.

*Appeal from St. Louis Circuit Court.*

*Krum, Decker & Krum*, for appellant.

I. The court below should have dissolved the injunction and dismissed the bill. The answer disputes the respondent's title. (Eden on Injunctions; Field v. Jackson, 2 Dick. 599; Pillsworth v. Hopton, 6 Ves. 51; Smith v. Collier, 8 Ves. 89;

Hannon v. Gardiner, 7 Ves. 305; Norway v. Rowe, 19 Ves. 144–7; Irvin v. Dixon, 9 How. 10, 28.)

II. Even if respondent had title, the injunction should have been dissolved. The facts do not make a case of irremediable mischief. If appellant was a trespasser, respondent could have obtained adequate satisfaction in the ordinary course of law. (James, etc., v. Dixon, 20 Mo. 79; State, to use of Connolly, v. Parkville & G. R. R.R., 32 Mo. 496; Hayden v. Tucker, 37 Mo. 214; Burgess v. Kattleman, 41 Mo. 480; Jerome v. Ross, 7 Johns. Ch. 330, approved in Smith v. Pettingill, 15 Verm. 84; Arnold v. Klepper, 24 Mo. 277; Newitt v. Gillespie, 1 How., Miss., 108; Rankin v. Charless, 19 Mo. 491.)

III. Unless this court should decide that a mere naked possession of tenants of plaintiff is sufficient title to obtain a perpetual injunction against the owner, who has also the right of possession, the decree below can not be sustained. The facts show conclusively that plaintiff could not maintain any action at law against defendant; in other words, he has no legal right. He could not maintain ejectment, because defendant has the better title; nor trespass, *quare clausum fregit,* because defendant, by plea of *liberum tenementum,* would defeat the action (2 Greenl. Ev., §§ 625–6, and cases cited; 1 Chit. Pl. 502–3; Argent v. Durand, 7 D. & E. 403; Emerson v. Sturgeon, 18 Mo. 172; Hill. Rem. for Torts, 207; Reed v. Price, 30 Mo. 446; Steph. on Pl. 319; 34 Mo. 419; Walker v. Swasey, 2 Allen, Mass., 313); nor forcible entry, because the plaintiff has not even actual possession. The principle of injunctive relief against a tort is that damage is caused or threatened to property admitted or legally adjudged to be the plaintiff's. (Adams' Eq. 207.) Irreparable injury to the freehold is the source of injunctive relief in such cases. (9 Wend. 577; Adams' Eq. 35; 1 Sto. Eq. Juris., § 24.) A party complainant must have established his right to a redress by an action at law, before he is entitled to an injunction. (Arnold v. Klepper, 24 Mo. 277; Jeremy's Ch. Juris. 310.)

*Colvin,* for respondent.

CURRIER, Judge, delivered the opinion of the court.

These parties, as the case finds, were adjoining land-owners, and derived title from a common grantor. The line dividing their respective lots, as they supposed, passed through the center of a double house, one half of which was believed by them to be on the plaintiff's lot, and the other half on the defendant's, thus furnishing to each party a connected, but independent, tenement. At the time the suit was brought, the plaintiff had been in peaceable possession of his lot and tenement some seventeen years. The house was a frame building, and was standing on the premises at the time of the plaintiff's purchase. It appeared, however, from a late and careful survey, that the plaintiff's tenement, or half of the double house, was in fact three feet on the defendant's ground, or on ground embraced within the limits of his original lot.

In the month of January, 1869, the defendant, wishing to remove his share of the house for the purpose of rebuilding, notified the plaintiff thereof, and of his intention to sever the house on the line dividing their respective lots. In pursuance of this plan, the defendant employed careful and competent parties to saw through the house on the true line of division between the lots, cutting three feet from the tenement occupied by the plaintiff. The work was commenced, whereupon the plaintiff instituted these proceedings for injunction. A temporary injunction was granted, which was subsequently made permanent. The defendant appeals from the judgment of the court granting the perpetual injunction. The question is thus raised whether the facts stated warranted the action of the court.

1. The jurisdiction of courts of chancery in cases of trespass is of modern origin, and it is uniformly held that an injunction will not be awarded to restrain the commission of an ordinary trespass where the injury flowing from it is not irreparable, and where an adequate remedy may be had in the recovery of damages against a solvent party. Chancellor Kent reviews the subject elaborately in Jerome v. Ross, 7 Johns. Ch. 315, and reaches the result above stated. He says: "I do not know a

case in which an injunction has been granted to restrain a trespasser merely because he is a trespasser." (See also James v. Dixon, 20 Mo. 79; Smith v. Pettingill, 15 Verm. 82; 2 Sto. Eq. Jur., § 928; Hill. on Injunc. 279, ch. 10.)

2. While chancery will not use its extraordinary powers to restrain by injunction a "trespasser merely because he is a trespasser," it will, nevertheless, interfere by injunction where the acts done or threatened are ruinous to the property trespassed upon, or are of a character to permanently impair its just enjoyment in the future, as when a trespasser digs into and works a mine to the injury of the proprietor, or where timber is attempted to be cut down by a trespasser in collusion with the tenant of the land; or where there is a dispute respecting the boundaries of estates, and one of the claimants is about to cut down ornamental trees in the disputed territory. "In short," says Judge Story, "an injunction is now allowable in all cases of timber, coals, ores, or quarries, when the party is a mere trespasser, or where he exceeds the limited rights with which he is clothed, upon the ground that the acts are or may be an irreparable damage to the particular species of property." (See 2 Sto. Eq. Jur., §§ 860, 928, 929, and the numerous cases cited.)

This doctrine is abundantly sustained by the authorities, and has become incorporated into the general system of equity jurisprudence. The case at bar clearly falls within the principle enunciated. The acts of the defendant done or threatened, and which he admits, are of a character to destroy the plaintiff's dwelling-house as a place fit for human habitation. He proposed to remove one entire end of the building, leaving the interior of the plaintiff's house exposed and wholly unprotected. If an injunction will issue to restrain a trespasser from interfering with a party's timber, coals, ores, or ornamental trees, it will not be denied, other things being equal, when it is invoked to save a party's domicile from disturbance and substantial destruction, so far as its usefulness as a place of residence is concerned.

3. But the defendant, by his answer, contests the plaintiff's title, and the case fails to find who held the title to the *locus in quo* at the time the suit was commenced. It is found that the

plaintiff had been in peaceable possession for about seventeen years; but whether this possession was adverse, under claim of title, does not appear. For aught that is shown to the contrary, it is possible that the title may be in the defendant, as it apparently is, unless the plaintiff's possession was hostile and adverse. If he has the title, then he has a right of possession, and ought not to be precluded from acquiring it. But if the injunction stands, he is under a permanent judicial inhibition against in " any wise " meddling with the property. His right to litigate the title in an action at law should be preserved to him. In Irwin v. Dixon, 9 How. 28, § 10, the court says: " When the right or title to the place in controversy, or to do the act complained of, is, as here, doubtful, and explicitly denied in the answer, no permanent or perpetual injunction will usually be granted till such trial at law is had settling the contested rights and interests of the parties." (See Stewart v. Chew, 3 Bland's Ch. 440; Falls Village Water Power Co. v. Tibbetts, 31 Conn. 165.) In order, therefore, to preserve to the defendant such legal rights in the premises as he may have, if any, and to give him an opportunity to establish them in an action at law, the judgment of the court below, making the injunction perpetual, will be reversed; the temporary injunction, in the meanwhile, being continued, and to be made permanent unless the defendant shall immediately institute his suit at law to establish his title to the disputed premises, and prosecute the same with effect.

It is usual in cases like this, where the title itself comes in controversy, to grant a temporary injunction to await the event of an action at law to be prosecuted by the plaintiff. But here the plaintiff is in actual possession, and has been for many years, and is therefore not in a position, nor has he any occasion, to sue. The defendant is the proper party to bring an action and test the rights of the respective parties at law. If he neglects to do this in a reasonable time, he will have no just grounds of complaint if the injunction is made perpetual against him in consequence of his own negligence.

For the reason stated, the judgment will be reversed and the cause remanded, to be proceeded with by the Circuit Court in accordance with the views herein expressed. (State v. Mobile, 5 Porter, Ala., 317.) The other judges concur.